Rueein, Judge,
clissentiente. —The decree, I think, is erroneous. In my opinion, if the plaintiff ever had equity and conscience on his side, he.has lost it by his delay,, and his bill ought to be dismissed.
A reasonable diligence is the best evidence of good' faith and a just cause. It alike promotes private interest and public convenience. It is the public policy to encourage it; bccanse it prevents litigation, or if that must be, truth is arrived at more easily and certainly. We are obliged to distrust him, who prefers his claim at a great interval after its origin. We are still more forcibly impelled to distrust a defence, set up ten years after-the judicial ascertainment of the demand of the crediton
The rule prescribes no particular time ; but where the statute of limitations bars at law, it bars also in e-< cjuity.
Where the nef-iiefis sought a. gainst a judgment at law, to let in a legai de-fence unknown at the trial, the bill should be filed wbhm- ...east nossihle delay*
A judge, it seems to me, must be very confident of bis sagacity in detecting falsehood, of his patience of investigation, of his capacity to ascertain the exact truth and his ability to do exact justice under all circumstances, if he be willing to enter into stale cases of this sort upon their particular circumstances. For my part, conscious of deficiencies, and of the perplexities in which I should be involved, and the danger of oftener doing wrong than right to suitors by such an attempt, I gladly take refuge under the well established principle of this court, which requires from him who would be heard in it, active diligence, as well as a just demand. After great delay, I cannot tell whether it be just or not. I therefore presume against it. I am obliged to seek some safeguard against my own fallibility, and those special pre-tences, which an artful man can contrive, to mislead me as to remote transactions. This I find in a presumption against laches.
■ I admit, there is no law of the court prescribing a particular time for all cases. But in a case, to which at law the statute of limitations is a bar. it is equally positive here. And where there is no positive bar, yet equity, as its law, adopts the rule prescribed for courts of law-in analogous cases.
The present, it is to be remembered, is not a suit for an equitable demand. The object is, to get a new trial at law, to let in a strict legal defence, namely, payment of the debt, for which there is a judgment at law. But relief is not granted here, merely because an unrighteous recovery has been had at law. That court is as competent .as this to do justice, in cases within its jurisdiction, unless the defence has been lost by accident or fraud. Both facts must concur — right, and a failure of right at law, without the party’s fault, in order to put this court in motion. And the question is, when this court must be applied to. It seems to me most reasonable, that the extraordinary interference of equity, to set aside the solemn trial and judgment of another court, ought to be asked for, if not forthwith, yet with the least possible delay, after the occasion for it arises. The situation of *106 a defendant at law is in sucli a case hazardous in tbeex-treme. There may he execution any day, or a new judgment without the possibility of defence, and then execution. Procrastination in such a situation can be imputed to nothing but the want of merits, or a most culpable negligence, ruinous to the parties and guileful towards the court. What is the legal analogy ? . If a party come to trial, the verdict cannnot be set aside for a matter within his knowledge, for which he could have a continuance. Why? Because the court will protect itself from the abuse of such experiments, and require the party to act at the proper period on his knowledge of facts. And as to the other two legal modes of correcting verdicts unduly obtained, namely, by appeal or by certiorari in the place of it: the former is . required by statute to he taken immediately and the latter, by the course of the court, to bo applied for as soon as the party can. Would the extraordinary remedy of a certiorari to re-try the facts be- granted after a lapse of ten years, since the matter came to the applicant’s knowledge. ? Certainly not. Neither ought this extraordinary equitable new trial?
This is in analog)' to the rule at law on applications for continuances for newly discovered testimony.
And also where a verdict is sought to be set aside by appeal or certiorari.
At any rate the plaintiff should be held, in analogy to the act of 1800 (ñ-ü. c. 551) prohibiting the granting of injunctions upon judgments obtained at law, more than four months after the trial, to file his bill- within that time after the discovery of the evidence.
But it seems to me, that we are not to decide this case upon such general reasoning alone. The legislature, moved by the great evil of injunctions, restrained the courts by the act of 18.00. It recites, that injunctions are frequently applied for, for the mere purpose of delay, and that the facility, of obtaining them enables debtors to defeat, creditors of their just claims ; and then enacts, that no injunction shall issue but within four months after the judgment at law is obtained, unless it shall appear by the oath of the plaintiff, that the application has been delayed in consequence of the fraud or false promises of the plaintiff at law, practiced or made at the time, or after obtaining judgment. I may admit, that this does not apply to relief founded upon an equity distinct from the matters tried or triable at law; as inthe case of a judgment on a bond for the purchase money of land, of which a defect of title or eviction has happened since the trial. I may admit too, that altho’ the injunction improperly issued, yet if the plaintiff’s equity appear in the answer, *107 it will not be dissolved ; because the injunction, being collateral to and in aid of the relief, would he immediately re-issued. I think both of these positions right. But I must consider the statute imperative, where the equity is not admitted in the answer, and consists altogether of a legal defence, existing before the trial at law; which the party now wishes to make available by new proof, not kept from him by the opposite side. If the act does not apply-to such a case, it does not to any. But then it is said, that this can only relate to a matter within the party’s power at the trial at law. I do not admit that; because if it were in his power, he cannot come here at any time. But if it be granted, we arc still bound to act in analogy to the statute and say, come within the four months after the discovery. If the analogy to the statute of limitations be obligatory on this court, still more clearly is the analogy to a statute, applying specially to a peculiar jurisdiction of this court, to be adhered to in similar cases. Why doe's the legislature tie us up to four months? Only because it is a reasonable time for men in common to apply to counsel, and prepare their cases ; therefore a subsequent injunction must be for delay, and delay only. It is true, this bill was filed within four months after the last judgment, but the equity is against the first one. The last is not foi* too much on any other ground, than that the first is unconscientious. If the ground of equity is gone as to the first, it must bo as to every thing built on it. If the plaintiff had filed his bill in 1825, against the judgment of 1818, would any judge have granted it, or hesitated to dismiss it on demurrer ? I think the plaintiff at law cannot be worse off by a delay of three years longer.
But should I be mistaken in all this, there is another analogy, which is extremely strong. If time has hallowed the judgment at law, so that in no manner can it now be disturbed by a superior legal tribunal, it seems to me, that it ought to bo equally respected here. Five ye ars bars a writ of error. By analogy to that, five years barred a bill of review ; and we have now a statute to that effect. If then errors of law, which appear upon the re *108 cord, and must always be tbe same in every court, which; go to show that the whole judgment is to be annulled, cannot be rectified, still less ought an enquiry into facts involved in that judgment to be entered upon, after that period. Why is a writ of error barred at all ? It is not because that which was not law lias become law ; hut because,‘if the judgment he reversed, at that late period, the party mayinthemeanwhilehavelosthis witnesses, and upon a second trial justice be defeated,as much by a perversion of the facts, as it was before by a mistake of the law. The legislature, acting upon general principles, and not presuming to canvass each case upon its particular merits, has therefore interposed this positive bar in all cases. The same reasons influence the discretion of this court in like manner. I have already mentioned the methods, by appeal and certiorari, of re-trying the fact at law, and remarked how strictly limited they are. I ask why equity should open the facts, after the courts of law. are deaf to ail errors, even of law P
A judgment ought not to be set aside for testimony discovered after the time allowed the defendant to bring error.
Much more ought a bill to set aside a judgment for after discovered testimony, be dismissed, where if it sought to reverse a decree, .it would be barred by lapse of time.
J3ut if this court is not to respect legal analogies, it surely ought to have much regard to a statute establishing its own course. Five years is also by a late act a bar to a bill of review for errors of law or fact. If the debt here were due by decree, instead of judgment, the plaintiff would be clearly barred. I do not perceive that a verdict of twelve men, establishing a fact, is of less obligation than the opinion of the chancellor upon the same fact. Nor do I perceive, that the principle, on which wo grant a new trial of an issue found in a suit at law', differs from that on which we entertain a bill of review upon newly discovered evidence. Then equal diligence ought to be exacted in each case, and that should he, that the party should apply as soon as he makes the discove- . ry. The rule indeed is much stronger relative to injunctions against judgments at law; because the act of 1800 (Rev. ch. 551) enacts a distinct and express limitation.
If however we are to look into the circumstances, there is nothing here, in my humble judgment, to create an exception. The verdict is nothing. I lay it out of the case altogether. That is the very error of the court be *109 low ; for the plaintiff ought not to have been permitted to proceed to his proofs. His equity was gone by his laches. The very reason why he cannot have relief is, that there is a presumption against him, that he will not, after such a lapse of time, prove the truth. "We will not therefore heai' his proofs at all, unless he establishes, in Ihe first -place, that he did not know-of them before. ' But if it were otherwise, there is no sufficient proof here. In this court, a verdict upon an issue ordered is not conclusive. It is only in aid of the chancellor’s conscience. (Bootle v. Blundel, 19 Ves. 500.) And if it be not satisfactory, he may set it aside, or decree against it without setting it aside. (Field v. Holland, 6 Cranch. 8.) It is only evidence to us therefore, and cannot change the aspect of the case, for that would be to assume a jurisdiction upon the prooís, and not upon the allegations of the parties. Here the ground of my opinion is, that the delay of asking for relief excludes the party from it.
But examine the circumstances further. It is said, that the plaintiff was ignorant and poor. Poverty and ignorance are too vague for any court to act on. I shall be sorry to see the day, when,a man will get more or less justice for being either rich or poor. If poverty has been so extreme, that the party, trying to act, was unable, that would prevent the effect of lapse of time, as creating a mere presumption. But that cannot set aside a rule of law, or a positive bar interposed by an act of Assembly. Poverty and ignorance cannot be replied to the statute of limitations. But there was no gross ignorance here of the party’s rights, much less of the facts. The plaintiff consulted his friends, and might have consulted counsel. The case is reduced to this, that he received bad advice. But that cannot govern us. The circumstances of the plaintiff do indeed appear, from the answer, to have been slender. But if I know any thing of the spirit or habits of the people of this country, men in his situation are least likely to let a judgment hangover them. They regard it as a sword suspended by a hair; and are ready enough to embark in law, tp escape its fatal fall. But one thing is decisive on this points *110 The bill itself is not framed on that idea. T be plaintiff ¿loes not even sue as a pauper. He has been able to give good sureties for the debt His poverty is not hinted at jn the billmuch less is it charged as the cause of the delay. It is brought forward in the answer ; and there is no particular distress of the plaintiff, or oppression by the defendant. He accounts for the delay, from the advice he received, that there was no danger} and from his belief, that he could defend himself on Matthews’ testimony. This might do, if he were on the defensive merely. But at law he was indefensible ; and in this court, he is the actor. He ought not therefore to have waited.
Then as to the delay of the plaintiffs at law: the plaintiff says, he thought they had abandoned the claim from a conviction of its injustice. He had no rightto think so, without better evidence. The defendant swears, that he was mistaken in the motive of the delay. It does not appear — nay, it is notpretended, that any communication was had with the defendant to that effect. The plaintiff did not ask the defendant. He did not even inform him, wbat Matthews would swear. I repeat therefore, that he had no reason for his opinion. And I say he did not think so: for from the beginning, the executors gave him fair and distinct notice, according to his own showing, that “ they were compelled to sue, and Leave him to his defence.” There was then no “fraud nor false promise on the part of the plaintiff at law, at the time or after the judgment at law;” and the plaintiff’s negligence has been gross.
Lastly, as to the time when the testimony of Matthews came to the plaintiff’s knowledge. The witness indeed swears, that he told the plaintiff what he knew in May, 1828. Is that credible ? It is directly contrary to the plaintiff’s own oath. In his sworn bill he says, that ...sometime after the judgment, this witness told him he heard the testator acknowledge to the plaintiff himself the full payment. “ Sometime” is, by itself, an indefinite expression. But elsewhere it is explained to mean “ a short time.” For he says, this information was received some time after the judgment, and on its being known *111 aud much talked of in tbe neighborhood ; and that he retied on that evidence, if any attempt should be made to revive the judgment. ‘ When was this talk ? Surely at or about the time of the judgment; and not after it had gone out of people's minds by becoming dormant. And equally certain is it, that the plaintiff could not rely on proof to defend a suit, if it should be brought, which did not come to his own knowledge until the very month of the trial.
The delay cannot therefore be accounted for in any of these ways. And it is, in my mind, without excuse; unless negligence, delay and leaving things in doubt be merits of themselves.
I cannot imagine a case more happily illustrative of' the soundness of the rules requiring active diligence, and making it a duty of conscience, in restraint of perjury, and in repression of the mistakes of courts. Were the plaintiff suing at law, he would be barred three times o ver. Were he prosecuting a writ of error or a bill of review here, for error of law or fact, both would be twice barred. Yet here he is to be allowed to proceed to his proofs ; and by such proof as is false upon the face of his own bill,, and relating to a conversation between the testator and the plaintiff himself fifteen years before, he is to deprive the defendant of the benefit of a judgment, rendered upon the withdrawal of his pleas, and as it were, by confession, and held, without resistance and without fraud on the part of the defendant, for ten years. I cannot believe such to be the law; and therefore do not concur with the majority of the court, that the decree below should be affirmed.
Per Curiam.' — Decker aeeirmbb.